1  Mark J. Peacock, Esq. SBN 156625
   LAW OFFICES OF MARK PEACOCK
2  5160 Campus Drive
   Newport Beach, CA 92660
3  Telephone: (949) 660-7762
   Fax: (949) 660-7764
4  Email: mark@markpeacocklaw.com
   Website: www.markpeacocklaw.com
5
   Attorneys For Plaintiffs
6
   Terry Rivera, individually and as the
7  Administrator of the Estate of Jose V. Rivera

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  TERRY RIVERA, individually and      )   Case No.:
    as the Administrator of the Estate   )
12  of Jose V. Rivera,                   )
                                         )
13          Plaintiffs,                  )   COMPLAINT FOR
                                         )   CONSTITUTIONAL
14      v.                               )   VIOLATIONS BY FEDERAL
                                         )   OFFICERS
15  DENNIS SMITH; HARLEY                 )
    LAPPIN; ROBERT McFADDEN;             )
16  SPECIAL INVESTIGATIONS               )   DEMAND FOR JURY TRIAL
    SPECIALIST ZIRAGOSA;                 )
17  OPERATIONS LIEUTENANT;               )
    ASSOCIATE WARDEN BELL;               )
18  ASSOCIATE WARDEN D.                  )
    SHINN; JESSE ESTRADA;                )
19  MARIE OROSZCO; FOOD                  )
    SERVICES DEPARTMENT                  )
20  SUPERVISOR; COMMISARY                )
    SUPERVISOR; UNIT                     )
21  SECRETARY DRAYTON; UNIT              )
    MANAGER BOWLES; and DOES             )
22  1 through 200, inclusive,            )
                                         )
23          Defendants.                  )
                                         )
24

25      Plaintiff, individually and as Administrator of the Estate of Jose V. Rivera,

26  alleges:

27  ///

    ///
28

COMPLAINT FOR CONSTITUTIONAL VIOLATIONS BY FEDERAL OFFICERS

# 1.

## JURISDICTION AND VENUE

1.     The claims in this action arise under the Fifth Amendment of the United States Constitution.  Jurisdiction is conferred on this Court by 28 United States Code Section 1343 (federal question).

2.     Venue lies in the Eastern District of California, the judicial district in which the claim arose, pursuant to 28 United States Code section 1391, subdivision b.

3.     At all times relevant herein, the defendants, and each of them, were duly appointed, qualified and acting Employees of the United States Government and at all times each defendant was acting in the course and scope of such employment and under color of law.

# 2.

## PARTIES

4.     At all relevant times decedent Correctional Officer Jose V. Rivera was a citizen of the United States and a resident of the city of Chowchilla, California.  At all relevant times, Correctional Officer Jose V. Rivera was employed by the United States as a correctional officer at the United States Penitentiary at Atwater, California ("USP Atwater").

5.     Plaintiff Terry Rivera is the surviving mother of Correctional Officer Rivera, who died unmarried and without children.  Plaintiff Terry Rivera sues individually and as the Administrator of the Estate of Jose Rivera.

6.     Defendant Harley Lappin at all relevant times was the Director of the Federal Bureau of Prisons and at all relevant times was acting in the course and scope of his employment with the United States.

7.     Defendant Robert McFadden at all relevant times was the Regional Director, Western Region, for the Federal Bureau of Prisons and at all relevant times was acting in the course and scope of his employment with the United

1  States.

2      8.    Defendant Dennis Smith at all relevant times was a resident of the

3  State of California, at all relevant times was the Warden of USP Atwater and at all

4  relevant times was acting in the course and scope of his employment with the

5  United States.

6      9.    Plaintiff is informed and believes and thereon alleges that Special

7  Investigations Specialist Ziragosa is and at all relevant times was, a resident of the

8  State of California, at all relevant times was a Lieutenant in the SIS office at USP

9  Atwater and at all relevant times was acting in the course and scope of

10  employment with the United States.

11      10.    Plaintiff is informed and believes and thereon alleges that Operations

12  Lieutenant is and at all relevant times was, a resident of the State of California, at

13  all relevant times was a Lieutenant in the SIS office at USP Atwater and at all

14  relevant times was acting in the course and scope of employment with the United

15  States.

16      11.    Plaintiff is informed and believes and thereon alleges that Associate

17  Warden Bell is and at all relevant times was, a resident of the State of California,

18  at all relevant times associate warden at USP Atwater and at all relevant times was

19  acting in the course and scope of employment with the United States.

20      12.    Plaintiff is informed and believes and thereon alleges that Associate

21  Warden D. Shinn is and at all relevant times was, a resident of the State of

22  California, at all relevant times was an associate warden at USP Atwater and at all

23  relevant times was acting in the course and scope of employment with the United

24  States.

25      13.    Plaintiff is informed and believes and thereon alleges that Food

26  Services Department Supervisor is and at all relevant times was, a resident of the

27  State of California, at all relevant times was the supervisor of the Food Services

28  Department at USP Atwater and at all relevant times was acting in the course and

COMPLAINT FOR CONSTITUTIONAL VIOLATIONS BY FEDERAL OFFICERS

scope of employment with the United States.

14.   Plaintiff is informed and believes and thereon alleges that Commissary Supervisor is and at all relevant times was, a resident of the State of California, at all relevant times was the supervisor of the Commissary at USP Atwater and at all relevant times was acting in the course and scope of employment with the United States.

15.   Plaintiff is informed and believes and thereon alleges that Unit Secretary Drayton is and at all relevant times was, a resident of the State of California, at all relevant times was a secretary of Unit 5A at USP Atwater and at all relevant times was acting in the course and scope of employment with the United States.

16.   Plaintiff is informed and believes and thereon alleges that Unit Manager Bowles is and at all relevant times was, a resident of the State of California, at all relevant times was a unit manager of Unit 5A at USP Atwater and at all relevant times was acting in the course and scope of employment with the United States.

17.   Defendant Maria Orozco is, and at all relevant times was, a resident of the State of California, at all relevant times was a Unit Manager at USP Atwater and at all relevant times was acting in the course and scope of her employment with the United States.

18.   Defendant Jesse Estrada is and at all relevant times was, a resident of the State of California, at all relevant times was a Lieutenant in the SIS office at USP Atwater and at all relevant times was acting in the course and scope of his employment with the United States.

### 3.

## CORRECTIONAL OFFICER JOSE V. RIVERA

19.   Correctional Officer Jose V. Rivera was 22 years old on June 20,

2008 when he was murdered by two inmates at the United States Penitentiary at Atwater, California ("USP Atwater"). Officer Rivera was a four-year veteran of the Navy, and had completed two tours of military duty in Iraq. He began his career with the Bureau of Prisons as a Correctional Officer on August 5, 2007 and was in his probationary year when he died.

## 4.
## BACKGROUND

### A.   Prior Hostage Situation

20.   In October 2007, inmates in Housing Unit 5A at USP Atwater took a correctional officer hostage in order to protest the fact that gangs were controlling cell assignments and charging a "tax" on cells. After negotiations, the hostage was released with only minor injuries.

21.   An investigation was conducted following the hostage situation. It was discovered that the hostage-takers had obtained stainless steel rods from the Food Service Department's industrial dishwasher conveyor belt and fashioned them into ice-pick type weapons, which were used to take the hostage. Further, at all relevant times, several repairs were made to the dishwasher conveyor belt in the Food Services Department to replace missing stainless steel rods.

22.   In response to the investigation, defendant Food Services Department Supervisor, Associate Warden D. Shinn, who was at all relevant times the warden in charge of operations, and Dennis Smith, who was at all relevant times the Warden, continued to permit unsupervised and unmonitored access to the dishwasher conveyor belt, continued to permit unsupervised and unmonitored extraction of parts from the dishwasher conveyor belt and continued to permit conversion of those parts into weapons.

/ / /

/ / /

COMPLAINT FOR CONSTITUTIONAL VIOLATIONS BY FEDERAL OFFICERS

**B.   Intoxication**

23.   At all relevant times, intoxicants were easily obtained by inmates at USP Atwater.  Inmate mail and interviews provided information to defendants, and each of them, that inmates "cooked" the sugar out of soda to provide ingredients for intoxicants; that intoxicants were sold and transported in empty plastic bottles sold in the Commissary.

24.   Defendants, and each of them, were specifically on notice that intoxicants were being created and used by inmates.  This notice came in the form of:  (1)  inmate mail; (2)  inmate interviews; (3) confiscated intoxicants; and, (4) intoxicated inmates.

25.   At all relevant times, and in violation of protocols, intoxicated inmates were routinely locked in their cells to "sleep it off" rather than:  (1) being taken to the Lieutenant's office; (2) being issued an incident report; and (3) being disciplined.

26.   At all relevant times, and in violation of protocols, intoxicants confiscated from inmates were routinely logged in and disposed of without an incident report being written or discipline imposed on the inmate from whom they had been confiscated.

**C.   Weapons**

27.   At all relevant times, weapons were plentiful at USP Atwater.

28.   At all relevant times, and in violation of protocols, if a weapon was discovered in an inmate's quarters, there would be no disciplinary action taken against the inmate.

**D.   Cell Assignments**

29.   At all relevant times, inmates transferred to USP Atwater were routinely not provided with specific cell assignments.  Rather, they were frequently assigned to a unit and told that, if they have not received a cell

COMPLAINT FOR CONSTITUTIONAL VIOLATIONS BY FEDERAL OFFICERS

1    assignment by count time, to just find a cell on their own.

2

3    **E.    Searches**

4    30.    At all relevant times, and in violation of protocols, routine pat

5    searches for weapons or contraband were not being conducted at USP Atwater.

6    31.    At all relevant times, and in violation of protocol, mass searches were

7    not thorough and only targeted specific items, such as ingredients for making

8    intoxicants, rather than being generalized and looking for all contraband and

9    weapons.

10

11    **F.    Unit Keys**

12    32.    At all relevant times, the only person on Unit #5A who had a key to

13    the unit, and therefore who had immediate access to the unit, was the Unit Officer.

     If the Unit Officer was attacked while in the unit, no rescuers could access the unit

14    until the Compound Officer was called and could arrive with a key.

15

16    **G.    Disciplinary Issues**

17    33.    At all relevant times, disciplinary issues, including the failure to issue

18    incident reports and enforce discipline mandates with respect to weapons

19    possessions and intoxication, and the failure to timely process incident reports and

20    disciplinary actions, led inmates at USP Atwater to believe they would not be held

21    accountable for their actions.  This, in turn, created a dangerous environment for

22    staff and inmates.  Similarly, mismanagement of disciplinary sanctions, the

23    secured housing unit and the annex to the secured housing unit, resulted in

24    inappropriate inmate release from, or failure to assign inmates to, secured housing.

25

26    **H.    Cell Counts**

27    34.    Routine cell counts were conducted at approximately 3:30 p.m. daily.

28    During cell counts, inmates were required to be in their cells.  Standard protocol

COMPLAINT FOR CONSTITUTIONAL VIOLATIONS BY FEDERAL OFFICERS

1   required that when cell count was called, inmates were to report to their cells.
2   Typically, however, when cell counts were called, inmates were allowed to roam
3   in the public areas until the duty officer reached them.  If they were not in a cell at
4   that point, an incident report could be issued.  As a matter of practice, the inmates
5   were allowed to go into any available cell for count and were not required to be
6   present in their assigned cells.  This practice allowed inmates to be at large while
7   the duty officer was alone in the unit.

### 5.

### FACTS

35.   On June 19, 2008, inmate James Guerrero arrived at USP Atwater
from USP Coleman as a 309 disciplinary transfer.  He was originally assigned a
cell in Unit 2B by the Unit Manager, Marie Orozco.  During intake screening,
inmate Guerrero was interviewed by Special Investigation Specialist technician
Ziragosa.  Inmate Guerrero indicated that he would not cell with any other inmates
on Unit 2.  SIS Ziragosa convinced inmate Guerrero, a Guamanian, to cell with
another Guamanian, inmate Jose Sablan in Unit 5A.

36.   In fact, given his disciplinary history, Guerrero should not have been
housed in the general prison population, but should have been assigned to the
secured housing unit (SHU).

37.   Marie Orozco was in another part of the prison during the dinner
hour.  While there, she was contacted in person by SIS Lieutenant Jesse Estrada,
who informed her that inmate Guerrero was going to be sent to Unit 5A rather than
Unit 2 where Orozco had preliminarily assigned him.  Orozco questioned Estrada
as to whether Estrada felt like Guerrero should first go to SHU.  Estrada contended
that Guerrero needed to "program" and needed to be in general population.
Orozco responded by saying, "Going to put him with another killer?", referring to
inmate Sablan.  Estrada again stated that Guerrero needed to be in general

COMPLAINT FOR CONSTITUTIONAL VIOLATIONS BY FEDERAL OFFICERS

population so he could program.  Orozco then said, "Okay if that is what you are going to do.  We'll be lucky if he doesn't end up killing somebody before the night is out."

38.    During the afternoon of June 20, 2008, the day after Guerrero's admission to Unit 5A, the Asian/Pacific Islanders in that unit began consuming intoxicants and continued to drink for an undetermined period of time before the 3:30 p.m. cell count.

39.    Correctional Officer Rivera was assigned as the Unit Officer to Unit 5A that day.

40.    At approximately 3:18 p.m., Officer Rivera called count and, as he had been trained, began to secure the unit in anticipation of the 3:30 p.m. cell count.

41.    At approximately 3:20 p.m., Officer Rivera approached a group of Asian/Pacific Islander inmates near cell 116, including Sablan and Guerrero, who were intoxicated.  After a brief conversation with Officer Rivera, the group began to break up.  Guerrero grabbed a plastic chair, raised it in the air and dropped it to the floor.  At that point, Sablan and Guerrero left the first tier and went up to the second tier of the unit while Officer Rivera began securing the lower tier in preparation for the cell count.  Officer Rivera finished securing the bottom tier and went up to the second tier and started securing the cells on the second tier.  Officer Rivera began to close the door on cell 223 while Guerrero and Sablan were standing outside the cell.  Just as Officer Rivera was closing cell 223, Guerrero stepped inside, while Sablan stayed outside.  Sablan pulled a weapon from his pocket and began stabbing Officer Rivera in the torso.

42.    Officer Rivera began to run away from Sablan and both Sablan and Guerrero pursued Officer Rivera.  Officer Rivera began to descend to the first floor of the unit.  Sablan stabbed Officer Rivera again as they ran down the stairwell.  Officer Rivera turned while on the stairwell and head-butted Guerrero

1   in an attempt to defend himself.  Sablan swung his arm with the weapon in his
2   hand, attempting to strike Officer Rivera.

3       43.    Officer Rivera reached the bottom of the stairwell and ran in the
4   direction of cell 108.  Officer Rivera activated his body alarm at that time.  Officer
5   Rivera was tackled around the legs by Guerrero near cell 105.  Officer Rivera was
6   held to the ground by Guerrero.  Sablan got on top of Officer Rivera and began to
7   stab him repeatedly.

8       44.    The Unit Secretary (defendant Drayton) entered the unit through the
9   Unit Team Door.  She was followed into the unit several seconds later by the Unit
10  Manager (defendant Bowles), also through the Unit Team Door.  The Unit
11  Manager requested assistance, but neither she nor the Unit Manager intervened or
12  rendered assistance during the assault.

13      45.    Other personnel attempted to enter the unit through the main door but
14  were unable to do so because the door was locked and only Officer Rivera, as Unit
15  Officer, had a key.  Other personnel could not enter the unit to assist until the
16  Compound Officer arrived with a key to open the door, resulting in considerable
    delay in intervention in the assault.

17      46.    Officer Rivera was taken to an outside hospital and pronounced dead.

18      47.    It was later determined that the weapon used by Sablan to kill Officer
19  Rivera was an ice-pick type weapon fashioned from a rod pilfered from the Food
20  Service Department dishwasher conveyor belt.

21      48.    As evidenced by the foregoing facts, defendants, and each of them,
22  were responsible for, and participated in, the creation, development, promotion,
23  encouragement and advancement of the dangerous conditions alleged in this
24  complaint including, without limitation, the assignment of the assailants to a lower
25  level of custody than warranted by their violent history and known violent
26  propensities, intoxication of inmates, availability of weapons to inmates, the
27  failure of procedures and processes regarding cell counts that would protect Unit

28

COMPLAINT FOR CONSTITUTIONAL VIOLATIONS BY FEDERAL OFFICERS
10

1  Officers conducting cell counts, the inability of rescuers to access the unit, and
2  lack of a cohesive and comprehensively-enforced discipline policy.

3      49.    At all relevant times defendants, and each of them acted with
4  deliberate indifference to the known and obvious dangers presented by the
5  assailants by subjecting decedent Corrections Officer Rivera to those dangerous
6  conditions, resulting in his tragic and unnecessary death.

7

8                              **FIRST COUNT**

9      50.    Plaintiff incorporates by reference each and every preceding
10  paragraph.

11     51.    Defendants, and each of them, participated in, or were responsible
12  for, the classification, placement, incarceration and over-all handling of the
13  assailants while they were incarcerated at USP Atwater.

14     52.    Defendants, and each of them, were specifically aware that the
15  assailants were likely to assault and kill decedent Correctional Officer Rivera,
16  other correctional staff and/or other inmates.

17     53.    Defendants, and each of them, were specifically aware of the dangers
18  posed by the assailants as they were and are extremely dangerous.

19     54.    Defendants, and each of them had a deep and unequivocal
20  appreciation of the extreme violent propensities and dangerous mental instability
21  of the assailants which posed a direct and appreciable danger to themselves, other
22  inmates, correctional officers, including Correctional Officer Rivera, and staff.

23     55.    On or about June 20, 2008, defendants were aware of the assailants'
24  dangerousness and defendants were aware of the dangerous condition they had
25  created in the manner in which they allocated the assailants' housing assignments
26  and the manner in which they classified and placed the assailants.

27     56.    Defendants, and each of them, willingly and knowingly participated
28  in the creation of the dangerous conditions that resulted in the death of
    Correctional Officer Jose Rivera.  Defendants' conduct was outrageous,

COMPLAINT FOR CONSTITUTIONAL VIOLATIONS BY FEDERAL OFFICERS

despicable and malicious and shocks the conscience.  Correctional Officer Rivera was knowingly, repeatedly and wrongfully subjected to the dangerous and violent propensities of the assailants and yet defendants, and each of them, acted with deliberate indifference in refusing to properly classify the assailants, in allowing the assailants to obtain intoxicants, in allowing the assailants to obtain weapons, in permitting only a single person on the unit to possess a key to the door, in permitting a lax discipline policy, among other things, and thereby exposing Correctional Officer Rivera to danger.

57.    As a result of the deliberate indifference of defendants, and each of them, in the creation and maintenance of a dangerous condition, Correctional Officer Rivera was killed in the line of duty on June 20, 2008.

58.    The conduct of defendants, and each of them, was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected constitutional rights of Correctional Officer Rivera under the Fifth Amendment.  The conduct of defendants, and each of them exhibited oppression, malice, gross negligence, willful or wanton misconduct or reckless disregard for the Fifth Amendment rights of Correctional Officer Rivera.

WHEREFORE, plaintiff demands judgment in this action against defendants and each of them, jointly and severally, for compensatory damages, punitive damages and attorneys' fees, all in an amount to be determined at the time of trial, and for such other and further relief as the Court may deem just and equitable.

Dated:   June 7, 2010                    LAW OFFICES OF MARK PEACOCK

By:_____
        MARK J. PEACOCK
        Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury in this action.

Dated:   June 7, 2010

LAW OFFICES OF MARK PEACOCK

By: _____
MARK J. PEACOCK
Attorney for Plaintiffs